IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID NASH,                                                   Civil No. 04-6291-PA

      Plaintiff,                                          ORDER

     v.

KEN LEWIS; et al.,

      Defendants.

PANNER, Judge:

In a prior order, I found that genuine issues of fact existed which precluded the granting of Mercy Medical Center's motion for summary judgment (#233). Subsequently, trial briefs were filed by the parties in preparation for trial, and Mercy Medical Center renewed its motion for summary judgment (#283). At a pretrial conference, I orally granted Mercy's motion (#322). This opinion explains my ruling.[1]

---

[1] In making my ruling, I have considered Mercy's original motion for summary judgment and plaintiff's response, supplemental evidence submitted by Mercy and Nash at the request of the Court following argument on objections to the Findings and Recommendation, the trial briefs filed by Nash and Mercy, and Mercy's renewed motion for summary judgment and Nash's response. A statement of the background facts undisputed by the parties is set forth in

## DISCUSSION

Federal claim

Nash alleges a claim against Mercy, a private hospital organized as an Oregon nonprofit corporation, for violation of his civil rights under 42 U.S.C. § 1983, relating to alleged violations of various Oregon statutes and regulations. The parties disagree as to whether Mercy was a state actor which would allow Nash to go forward on a section 1983 claim against it. However, even if Mercy is a state actor, which I do not decide, Nash does not support a section 1983 claim against Mercy. Courts which have considered the application of section 1983 municipal liability articulated in Monell v. Department of Social Services, 436 U.S. 658 (1978), to private corporations have concluded that the corporation will not be liable under section 1983 for torts committed by its employees when liability is predicated on a theory of respondeat superior. Under the principles of Monell, a private corporation will be liable under section 1983 only when an official policy or custom of the corporation causes the deprivation of constitutional rights. See e.g., Iskander v. Village of Forest Park, 690 F.2d 126, 128-29 (7th Cir. 1982) (and cases cited) ("[J]ust as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, a private corporation is not vicariously

---

Judge Cooney's Finding and Recommendation (#166).

Order - Page 2

liable under § 1983 for its employees' deprivations of others' civil rights." (Citing <u>Monell</u>.)); <u>Sanders v. Sears, Roebuck & Co.</u>, 984 F.2d 972, 975-76 (8th Cir. 1993) (and cases cited) ("[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies."); <u>Powell v. Shopco Laurel Co.</u>, 678 F.2d 504, 506 (4th Cir. 1982) (<u>Monell</u>'s holding is "equally applicable to the liability of private corporations"); <u>Dubbs v. Head Start, Inc.</u>, 336 F.3d 1194, 1216 (10th Cir. 2003) (and cases cited); <u>Austin v. Paramount Parks, Inc.</u>, 195 F.3d 715, 727-28 (4th Cir. 1999).  It is clear from the pleadings in the record and the course of proceedings that Nash's claim against Mercy is based on a theory of respondeat superior liability of a corporate entity, which is insufficient to allow Nash to go forward on his section 1983 claim against Mercy.  Instead, Nash must advance some corporate policy, custom, or practice of Mercy's which inflicted the alleged constitutional violation.  This, Nash does not do.  Nash's section 1983 claim against Mercy is dismissed.

<u>State claims</u>

Nash claims that psychotropic medications were administered in violation of ORS 430.210(1)(f) and OAR 309-033-0620 through 309-033-0650, particularly OAR 309-033-0630.  The provisions referenced by Nash do not apply in the circumstances because he was not receiving services from the alcohol and drug abuse programs and he was not a person "committed" as

Order - Page 3

opposed to a person in custody pursuant to an ORS 426.232 hospital hold. <u>See</u> ORS 426.005; OAR 309-033-0250; OAR 309-033-0710. ORS 426.072 appears to be applicable. ORS 426.072 (2)(c) provides that, in circumstances where an allegedly mentally ill person is placed in custody at the hospital by a physician under ORS 426.232, as here,

> all methods of treatment, including the prescription and administration of drugs, shall be the sole responsibility of the treating physician. However, the person shall not be subject to electroshock therapy or unduly hazardous treatment and shall receive usual and customary treatment in accordance with medical standards in the community.

Nash indicated in his trial documents that he would not call any medical or psychiatric expert to testify at trial and, therefore, he has no evidentiary support for a claim that his treatment at Mercy did not comply with the usual and customary treatment in accordance with medical standards in the community. Nor is there any evidence or other indication in the record that the medications administered to Nash constituted unduly hazardous treatment within the meaning of the statute. Nash's claims relating to the administration of medication while he was in custody at Mercy are dismissed.

It is Nash's position that Mercy violated ORS 426.385(1)(i) relating to his right to counsel. That statue applies to the rights of committed persons and is not applicable in the situation present here where Nash was admitted on an emergency mental health hold. ORS 426.234 relates to the duties of facility staff

as to emergency care, custody, and treatment of mentally ill persons in certain circumstances. At the time a person is admitted under ORS 426.232 (emergency hospital hold by physician), as was the case here, the person shall be informed of his right to representation or appointment of counsel as described in ORS 426.100. ORS 426.234(1)(a). ORS 426.100, relating to commitment procedures, provides in relevant part that, when a person is detained under ORS 426.232, the person has the right to obtain legal counsel "during the proceedings," which appears to refer to the commitment proceedings. ORS 426.100(3)(a); see OAR 309-033-0540(2). Here, the record shows that Nash was appointed counsel for his commitment hearing. It is arguable that 426.100(3)(a) applies to commitment proceedings generally, including a person's time in custody prior to the commitment hearing. The evidence of Nash's time at Mercy, including chart notes, shows that Nash was quite disturbed during the time he was in custody at Mercy. Chart notes submitted to the Court and Dr. Mendelson's declarations show that Nash's condition fluctuated; at times he was lucid and calm, but at other times he threatened staff and a show of force was called. Based on this record, even if counsel had been retained for him, it is doubtful that counsel would have been able to secure his release from the emergency hold. It is noteworthy that when counsel was appointed for him for purposes of his commitment hearing, he rejected counsel's representation. Based on the record before me, plaintiff's claims relating to

Order - Page 5

representation by counsel are dismissed.

Nash also claims that ORS 430.210(1)(*l*) was violated because his sister was not contacted. That section relates to the rights of persons receiving services under the alcohol and drug abuse programs to visit with family members and friends, which is not applicable in this case. ORS 426.234, supra, includes a provision relating to the rights of persons retained under ORS 426.232 to communicate with others, but it only applies to persons suspected of being a foreign national. ORS 426.234(1)(e); see OAR 309-033-0540(3) (notification of next of kin as required under ORS 426.234(1)(e)). Even if his sister had been contacted, the record shows that she resides in California and it is doubtful she would have been able to assist Nash during the short time he was detained at Mercy. Nash's claims in this regard are dismissed.

Nash claims that Mercy was required to release him because he was not dangerous. ORS 426.234(2)(c) provides in pertinent part:

> If, at any time prior to the hearing under ORS 426.070 to 426.130, the physician responsible for a person admitted or retained under ORS 426.232 determines that the person is not dangerous to self or others and is not in need of emergency care or treatment for mental illness, the physician may release the person from the detention authorized by ORS 426.232. . . .

Oregon regulations provide in relevant part:

> (5) When a person in custody can be released. A person who is detained, in custody, or on a hold shall be released as described:
> . . . .
> (c) Physician's release of a person on a hospital hold. The treating

Order - Page 6

> physician shall release a person retained or admitted to a hospital pursuant to ORS 426.232, Hospital Hold, whenever the physician makes the determination that the person is not dangerous to self or others. . . .

OAR 309-033-0250(5)(c).

It is clear on the record before me that Nash was in need of emergency care or treatment for mental illness during the time he was at Mercy.  Dr. Mendelson, Nash's treating physician at Mercy and the person authorized to release Nash under statutory requirements, determined that Nash remained a danger to himself or others throughout the time he was hospitalized there.  Dr. Mendelson's determination is not contrary to the chart notes in the record.  Moreover, as explained by Dr. Mendelson,

> A person who is psychotic, as Dr. Nash was on October 20 and 21, cannot offer reliable information about his own history or intentions.  A person who is psychotic cannot reliably commit to being safe and does not have the capacity to enter a contract for safety, which a patient must be able to do to safely be discharged.  . . . . His psychosis and accompanying unpredictability made it very likely that he was or would at any moment become a danger to himself or others.  A person who is psychotic can, and often will, become violent upon a moment's notice.  This is especially true for people, such as Dr. Nash, who believe they are being watched or followed.

(Suppl. Mendelson Decl. ¶ 7.)  Dr. Mendelson also declared that an acutely psychotic, manic patient generally requires seclusion, and it was quite likely that Dr. Nash's behavior would escalate in an environment of increased stimuli.  He opined that it would have been extraordinarily risky to discharge Dr. Nash

Order - Page 7

without observing him first in an open unit setting for at least several days. In this regard, plaintiff indicated that he would not be calling any medical or psychiatric witnesses at trial and therefore, this testimony would be uncontroverted.

Nash declares in his declaration that he was released from lockup by Dr. Mendelson who told him, "'You don't belong in here,'" and that Dr. Mendelson later told him that he would release him outright but he was on a Jackson County hold, so he was being transported to Two North. (Nash Decl. ¶ 32.) It is noteworthy that this statement was made at the time of his release, apparently on the morning of October 21, 2003, when Dr. Mendelson saw Nash around 9:40 a.m.; Nash was, in fact, transported to Rogue Valley Medical Center around noon that day. This statement does not raise any triable issue as to whether Nash should have been released before he was transported back to Rogue Valley Medical Center. It is important to note that Mercy was holding Nash for Rogue Valley Medical Center. Mercy had an obligation to care and treat Nash while he was admitted there, but it had no legal responsibility other than to return him to the medical center.

Further, although state regulations appear to permit the release of a person found not to be dangerous to self or others, the state statute requires both that the person not be a danger and that the person not be in need of emergency care and treatment before release. Nash does not contend that he was not in

Order - Page 8

need of emergency care and treatment. Accordingly, Nash's claims relating to Mercy's failure to release him are dismissed.

On the record, Nash has indicated that any asserted violation of statutes and/or regulations relating to mechanical restraints does not apply to Mercy.

Nash's state claims are dismissed.

## **ORDER**

Based on the foregoing, it is ordered that defendant Mercy Medical Center's renewed motion for summary judgment (#283) is granted and Mercy Medical Center is dismissed.

IT IS SO ORDERED.

DATED this \_\_\_6\_\_\_ day of July, 2007.

\_\_/s/ Owen M. Panner_____
Owen M. Panner
United States District Judge